No. 20-71765 (L)
(consolidated with Nos. 20-72734 and 20-72749)

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

LEAGUE OF CALIFORNIA CITIES, *ET AL.*,
*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,
*Respondents.*

---

*ON PETITIONS FOR REVIEW OF AN ORDER OF*
*THE FEDERAL COMMUNICATIONS COMMISSION*

---

## REPLY BRIEF OF INTERVENOR CITY AND COUNTY OF
## SAN FRANCISCO, CALIFORNIA IN SUPPORT OF PETITIONERS

Jeffrey M. Bayne
Lauren L. Springett
Spiegel & McDiarmid LLP
1875 Eye Street, NW
Suite 700
Washington, DC 20006
(202) 879-4000
*Attorneys for Intervenor City and*
*County of San Francisco, California*

April 7, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 3

I.   Neither the statute nor the Commission's own regulations permit
     limiting concealment elements to only those elements that make a
     facility look like something else. ........................................................ 3

II.  The Commission's new express evidence requirement is contrary
     to law ................................................................................................. 8

III. The Commission's position on equipment cabinets conflicts with
     both the statute and the Commission's own regulation. ....................... 13

IV. The statute does not allow the height of a new antenna to be
     ignored when determining whether a modification substantially
     changes the physical dimensions of an existing facility ....................... 17

CONCLUSION ......................................................................................... 21

i

# TABLE OF AUTHORITIES

Page

## FEDERAL COURT CASES

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).......................................20

*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962)...............................18

*Landgraf v. Usi Film Prods.*, 511 U.S. 244 (1994) ........................................... 9-10

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ...................................6

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639 (2012) ........ 5-6

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) .............................................................18

## FEDERAL AGENCY CASES

*In the Matter of Implementation of State and Local Governments'
    Obligation to Approve Certain Wireless Facility Modification Requests
    Under Section 6409(a) of the Spectrum Act of 2012*, WT Docket No. 19-
    250 and RM-11849, Declaratory Ruling and Notice of Proposed
    Rulemaking, FCC 20-75, 35 FCC Rcd. 5977 (rel. June 10, 2020) .............*passim*

*In the Matter of Acceleration of Broadband Deployment by Improving
    Wireless Facilities Siting Policies; Acceleration of Broadband
    Deployment: Expanding the Reach and Reducing the Cost of Broadband
    Deployment by Improving Policies Regarding Public Rights of Way and
    Wireless Facilities Siting; 2012 Biennial Review of Telecommunications
    Regulations*, WT Docket No. 13-238, WT-13-32 and WC-11-59, Report
    and Order, FCC 14-153, 29 FCC RCD 12865 (rel. Oct. 21, 2014)......3, 5, 6, 7, 9

## FEDERAL STATUTES

47 U.S.C. § 153(35) .....................................................................................................7

The Middle Class Tax Relief and Job Creation Act of 2012, Pub. L. No.
    112-96, 126 Stat. 156, 232-233, 47 U.S.C. § 1455(a) ..........................................1

47 U.S.C. § 1455(a)(1)...........................................................................1, 13, 17, 20

## FEDERAL ADMINISTRATIVE REGULATIONS

47 C.F.R. § 1.6100(b)(4)......................................................................14

47 C.F.R. § 1.6100(b)(5)......................................................................14

47 C.F.R. § 1.6100(b)(7)(i) ................................... 2, 15, 16, 17, 18, 19, 20

47 C.F.R. § 1.6100(b)(7)(i)(A) ...........................................................15, 16

47 C.F.R. § 1.6100(b)(7)(iii)............................................................2, 15, 18

47 C.F.R. § 1.6100(b)(7)(iv).....................................................................4

47 C.F.R. § 1.6100(b)(7)(v).........................................2, 3, 4, 5, 7, 8, 9, 16

47 C.F.R. § 1.6100(b)(7)(vi)...............................................................2, 3, 5, 9

## OTHER AUTHORITIES

American Heritage Dictionary (5th ed. 2022) .........................................7

## INTRODUCTION

The "may not deny, and shall approve" standard of Section 6409(a) of the Spectrum Act[1] is limited to only those modifications of existing facilities that "do[] not substantially change the physical dimensions of such" existing facility. 47 U.S.C. § 1455(a)(1). The statute does not authorize the Federal Communications Commission ("Commission" or "FCC") to interfere with State and local authority beyond this specific limitation, nor does it grant the Commission authority to impose a federal preference for certain siting conditions or impose retroactive procedural requirements on local governments.

The Commission[2] and Industry Intervenors[3] have failed to show that the new requirements established by the *Declaratory Ruling*[4] on review are permissible under the statute or supported by the Commission's existing regulations. In this

---

[1] The Middle Class Tax Relief and Job Creation Act of 2012, Pub. L. No. 112-96, 126 Stat. 156, 232-233 ("Spectrum Act"). In this Brief, all references to "Section 6409(a)" refer to Section 6409(a) of the Spectrum Act, codified at 47 U.S.C. § 1455(a).

[2] Brief for Respondents, ECF No. 83 ("FCC Br.").

[3] Brief for Respondent-Intervenors CTIA – The Wireless Association ("CTIA") and the Wireless Infrastructure Association ("WIA") (collectively "Industry Intervenors"), ECF No. 86 ("Industry Intervenors Br.").

[4] *In the Matter of Implementation of State and Local Governments' Obligation to Approve Certain Wireless Facility Modification Requests Under Section 6409(a) of the Spectrum Act of 2012*, WT Docket No. 19-250 and RM-11849, Declaratory Ruling and Notice of Proposed Rulemaking, FCC 20-75, 35 FCC Rcd. 5977 (rel. June 10, 2020) ("*Declaratory Ruling*" or "*Ruling*") (Petitioners' Joint Excerpts of Record, No. 20-71765, ECF No. 46 ("ER") at 2).

1

Reply, Petitioner-Intervenor the City and County of San Francisco

("San Francisco") addresses flaws in the arguments raised by the Commission and

Industry Intervenors with respect to four aspects of the *Declaratory Ruling*:

> (1) the Commission's reinterpretation of the concealment elements provision
> of 47 C.F.R. § 1.6100(b)(7)(v) to narrowly apply only to those elements
> that make a wireless facility look like something else;

> (2) the Commission's new, retroactive "express evidence" procedural
> requirement for concealment elements under 47 C.F.R. § 1.6100(b)(7)(v)
> and siting conditions under 47 C.F.R. § 1.6100(b)(7)(vi);

> (3) the Commission's reinterpretation of the equipment cabinets limit of
> 47 C.F.R. § 1.6100(b)(7)(iii) so that there is no cumulative limit on the
> number of equipment cabinet additions that qualify as a non-substantial
> change under Section 6409(a); and

> (4) the Commission's reinterpretation of 47 C.F.R. § 1.6100(b)(7)(i) to
> exclude the height of a new antenna from consideration of whether the
> addition of a new antenna substantially changes the physical dimensions
> of an existing facility.

San Francisco endorses, but does not repeat, the arguments presented by Petitioners Boston, et al. and Petitioners League of California Cities, et al.[5] on reply about the procedural and other shortcomings of the *Declaratory Ruling*.

## ARGUMENT

## I. NEITHER THE STATUTE NOR THE COMMISSION'S OWN REGULATIONS PERMIT LIMITING CONCEALMENT ELEMENTS TO ONLY THOSE ELEMENTS THAT MAKE A FACILITY LOOK LIKE SOMETHING ELSE.

1. The Commission argues that in its *2014 Infrastructure Order*[6] the Commission "explained that 'conditions' under Section 1.6100(b)(7)(vi) include 'conditions' that address a site's visual impact, such as 'fencing' and 'height or width increases,'" and therefore the "concealment elements" provision of Section 1.6100(b)(7)(v) "cannot include all conditions that can obscure a facility from view, because the provisions would then be redundant at least as to fencing and size." FCC Br. 58 (citations omitted); *see also id.* at 60-61. But the

---

[5] Collectively, with San Francisco, "Localities."

[6] *In the Matter of Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies; Acceleration of Broadband Deployment: Expanding the Reach and Reducing the Cost of Broadband Deployment by Improving Policies Regarding Public Rights of Way and Wireless Facilities Siting; 2012 Biennial Review of Telecommunications Regulations*, WT Docket No. 13-238, WT-13-32 and WC-11-59, Report and Order, FCC 14-153, 29 FCC RCD 12865 (rel. Oct. 21, 2014) ("*2014 Infrastructure Order*").

3

Commission's redundancy argument rests on the faulty assumption that provisions related to fencing or size are necessarily "concealment elements."

Contrary to the Commission's claim, there are many fencing, height and width, and location requirements that could be "conditions" under Section 1.6100(b)(7)(iv) but would not also be "concealment elements" under Section 1.6100(b)(7)(v). For instance, fall zone requirements (which "define the area where a tower would collapse in the event of a catastrophic failure"[7]) are conditions based on height and location, but are entirely unrelated to concealment. A fencing requirement may be required to protect public safety, rather than to conceal the facility. Even setback requirements may be for purposes other than concealment. For example, the City of South Lake Tahoe, California, "establishes a snow removal area adjacent to the right-of-way where no permanent or temporary improvements are permitted unless setbacks and other requirements are met, in order to avoid impeding snow removal operations." San Diego, et al., Comments at 60 (2-ER-305). *See also id.* (explaining that setbacks may be designed to "ensure that enough light and ventilation reach the property and to keep buildings from being erected too close to property lines.") (quoting Black's Law Dictionary 1580 (10th ed. 2014)) (internal quotation marks omitted).

---

[7] WIA, Petition for Declaratory Ruling at 19 (ECF No. 84, FCC Supplemental Excerpts of Record ("SER")-187).

Other conditions covered by Section 1.6100(b)(7)(vi) are clearly unrelated to concealment. As discussed in the *2014 Infrastructure Order*, these requirements include conditions related to "access to the site" and "drainage." *2014 Infrastructure Order* ¶ 200. Likewise, in the City and County of San Francisco, when applicants propose to modify existing wireless facilities installed on poles, San Francisco requires a structural report demonstrating that the pole can safely support the additional equipment in order to protect the health, safety, and welfare of the public. San Francisco, Reply Comments at 4 (2-ER-237). Thus, the Commission is wrong to claim (FCC Br. 60-61) that Localities' reading of the statute and the term "concealment elements" under Section 1.6100(b)(7)(v) would render "conditions" covered by Section 1.6100(b)(7)(vi) superfluous or "devoid of meaningful effect."

To the extent there might be some concealment elements that could also fall within the scope of Section 1.6100(b)(7)(vi), the Commission is wrong to rely on this potential overlap to support the *Declaratory Ruling*'s narrowing of the scope of concealment elements in Section 1.6100(b)(7)(v) beyond its unambiguous meaning. It is not uncommon for statutory or regulatory provisions to have some overlap in scope. To reconcile conflicting or overlapping provisions, courts and agencies have long relied on the well-established canon of construction that the specific governs the general. *See, e.g.*, *RadLAX Gateway Hotel, LLC v.*

*Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("'[I]t is a commonplace of statutory construction that the specific governs the general.'") (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). Narrowing the specific provision beyond its plain meaning, to avoid any potential for overlap, turns this basic principle of construction on its head. *See id.* (explaining that where "a general authorization and a more limited, specific authorization exist side-by-side," "*[t]he terms of the specific authorization must be complied with*") (emphasis added).

2.     Contrary to the Commission's argument that Localities' interpretation would read redundancy into the regulations, the *Commission's* interpretation would read unnecessary surplusage into the *2014 Infrastructure Order*. The relevant discussion in the *2014 Infrastructure Order* refers to "modification request[s] related to concealed or 'stealth'-designed facilities." *2014 Infrastructure Order* ¶ 200. The Commission concedes that limiting concealment elements to "'elements of a stealth-designed facility intended to make the facility look like something other than a wireless tower or base station'" would "treat[] 'concealed' and 'stealth' as synonyms." FCC Br. 55-56 (quoting *2014 Infrastructure Order* ¶ 200); *see also id*. at 57 (arguing that "concealed or 'stealth'-designed facilities" should be treated as a unified whole).

If the *2014 Infrastructure Order* truly intended to treat "concealed or 'stealth'-designed facilities" as indistinguishable from each other, there would have been no need to refer to both rather than just to stealth-designed facilities. Nor would there be any reason for the regulation to use the term "concealment" in the first place, rather than refer exclusively to stealth-designed facilities. Thus, the plain language of both Section 1.6100(b)(7)(v) and the *2014 Infrastructure Order* confirm that concealment elements are not limited to stealth-designed facilities.

3.    The Commission and Industry Intervenors also argue that the phrase "concealment elements of the eligible support structure" in Section 1.6100(b)(7)(v) limits the concealment elements to those physically located on the eligible support structure (in contrast to other characteristics of an eligible support structure). FCC Br. 59; *see also* Industry Intervenors Br. 33-34. But this construction leads to an unreasonably narrow meaning of the broad term "element."[8] The location and size of an eligible support structure (e.g., whether it is visible given its

---

[8] *See, e.g.,* 47 U.S.C. § 153(35) (defining, for purposes of the Communications Act, "network *element*" to mean "a facility or equipment used in the provision of a telecommunications service. Such term also includes *features, functions, and capabilities* that are provided by means of such facility or equipment, including subscriber numbers, databases, signaling systems, and information sufficient for billing and collection or used in the transmission, routing, or other provision of a telecommunications service.") (emphasis added). *See also* The American Heritage Dictionary, defining an "element" as "[a] fundamental, essential, or irreducible constituent of a composite entity." *Element*, American Heritage Dictionary (5th ed. 2022), available at: https://ahdictionary.com/word/search.html?q=element.

surroundings) can be just as much a concealment element of that structure as its color.

Nothing in the statute grants the Commission authority to impose a federal preference for one type of concealment element (e.g., color or stealth design) over another (size and location). Moreover, as previously explained (Petitioner-Intervenors Br. 11-12),[9] it is particularly arbitrary for the Commission to discourage the use of concealment elements that rely on existing environmental features—as those elements are often more cost efficient. Imposing requirements on location and size is a legitimate and cost-effective way to conceal a facility, and it is one that would not require the construction of new concealment elements.

The Commission's unreasonably narrow interpretation of concealment elements is contrary to the regulation and the authority granted to it by the Spectrum Act. The *Declaratory Ruling*'s interpretation of Section 1.6100(b)(7)(v) should be vacated.

## II.     THE COMMISSION'S NEW EXPRESS EVIDENCE REQUIREMENT IS CONTRARY TO LAW.

1.     The Commission argues that "[b]y specifying how to identify" the concealment elements and siting conditions referenced in 47 C.F.R.

---

[9] Brief for Petitioner-Intervenors City and County of San Francisco, Marin County, and the National Association of Telecommunications Officers and Advisors ("NATOA"), ECF No. 50 ("Petitioner-Intervenors Br.").

§§ 1.6100(b)(7)(v) and 1.6100(b)(7)(vi) "the *Declaratory Ruling* 'explain[s] . . . the substantive law that already exists.'" FCC Br. 67 (quoting *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003)). But, as previously explained (Petitioner-Intervenors Br. 16), the Commission's argument addresses the wrong timeframe. The *Declaratory Ruling*'s express evidence requirement is not limited to actions taking place *after* Sections 1.6100(b)(7)(v) and 1.6100(b)(7)(vi) were promulgated. Rather, it applies to State and local actions that took place *prior* to the *2014 Infrastructure Order* and even *prior* to the Spectrum Act.[10] Because the relevant statute and regulations had not yet been enacted, it is incorrect to claim that the *Declaratory Ruling* merely explains the substantive law that already existed.

The Commission's argument that its express evidence requirement is "prospective" also falls short. FCC Br. 69. To support that argument, the Commission selectively quotes precedent to argue that a rule is not retroactive merely because it draws on past facts for its operations or upsets expectations. *Id*. But the Commission never engages with, let alone disputes, the standard courts apply to determine when a rule *is* retroactive: "the court must ask whether the new provision attaches new legal consequences to events completed before its

---

[10] *See Declaratory Ruling* ¶ 42 (1-ER-23) ("[T]here must be express evidence that *at the time of approval* the locality required the feature and conditioned approval upon its continuing existence . . . .") (emphasis added).

enactment." *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 269-270 (1994). Here, the answer to that question is indisputably yes. The *Declaratory Ruling* imposes a new federal procedural requirement on local land use review and approval processes across the country, and it applies that requirement to actions that may have taken place years before the statute was enacted and the regulations promulgated. If a locality failed to adhere to the not-yet-existing express evidence requirement at the time it approved the facility, the *Ruling* now deems void any concealment elements or siting conditions associated with that past approval at the time it was given.

The Commission attempts to avoid the retroactive nature of its express evidence requirement by arguing that "nothing suggests those provisions originally covered conditions that were not supported by express evidence." FCC Br. 68. But that circular reasoning cannot overcome the fact that the Spectrum Act did not grant the Commission authority to promulgate any procedural requirements for actions that took place prior to the enactment of the statute. Neither the Commission nor Industry Intervenors can cite to anything in the statute that indicates that was Congress's intent.

2.  The Commission further disputes the retroactivity of its express evidence requirement by claiming that "to the extent the meaning of 'condition' and 'concealment elements' were unclear, localities had no legitimate reliance interests in their 'own (rather convenient) assumption that unclear law would

10

ultimately be resolved in [their] favor.'" FCC Br. 70-71 (citation omitted). But as the record demonstrates, prior to the Spectrum Act localities had no reason to believe that they were required to comply with *any* federal procedural requirements with respect to concealment elements or conditions.[11] They have legitimate reliance interests in the validity of their own local processes.

Indeed, the Commission's arguments about reliance interests and notice has it backwards. Pre-Spectrum Act, localities had no notice that their actions would be subject to federal procedural requirements. Wireless providers likewise had no reasonable expectation, pre-Spectrum Act, that they would be entitled to federal preemption of the local approval process for certain modifications of existing facilities. The Commission therefore cannot logically "base[] its reading on 'the basic principle that applicants should have clear notice of what is required by a condition and how long the requirement lasts.'" FCC Br. 66 (quoting *Declaratory Ruling* ¶ 42 n.123 (1-ER-25)). It is patently unreasonable to expect localities to have provided "clear notice" about how pre-Spectrum Act approvals would be

---

[11] *See, e.g.*, NATOA, Comments at 9-10 (2-ER-268-69) (explaining that "[m]any towers and collocations on 'base stations' were approved long before the enactment of Section 6409" and that "Municipalities may have relied on all kinds of elements of the original siting request—fencing, landscaping, paint color, materials, etc.—to conceal the wireless equipment without expressly stating that was the purpose").

affected by that Act, and wireless providers could have no reasonable expectation of such notice.

3. Finally, the Commission attempts to defend the retroactivity of its express evidence requirement by arguing that "a clarification with retroactive effect is not unjust or unwarranted when the interpretation 'fill[s] a void in an unsettled area of law,' and is not an 'abrupt departure from well-established practice.'" FCC Br. 72 (quoting *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 521 (9th Cir. 2012)). But that is not the case here. Prior to the Spectrum Act, it was well established that localities could approve wireless siting requests by complying with applicable State and local law, and they could rely on extant conditions on the surrounding property as concealment elements without having to explicitly recite those conditions when approving the request. Localities had no reason to consider a then non-existent federal agency ruling construing a then non-existent federal statute requiring them to expressly recite extant concealment conditions on which they had relied.

If, for instance, a wireless provider submitted an application for a permit to install a facility located on a certain part of a rooftop and sized such that it was not visible from the ground, there would be no reason for the locality to expressly state that those aspects were specifically intended to be concealment elements or conditions of siting when approving the request as submitted pursuant to State and

local law. The *Declaratory Ruling*, however, would disrupt that established practice by imposing new after-the-fact legal requirements on the locality's earlier decision. Under the Commission's new requirements, the locality could do nothing to require the modified facility to continue to be concealed. Because these actions took place before the Spectrum Act existed, there was no void in unsettled law to be filled. Absent clear authorization from Congress to enact a retroactive rule—which the Spectrum Act does not provide—the Commission's express evidence requirement is contrary to law.

### III. THE COMMISSION'S POSITION ON EQUIPMENT CABINETS CONFLICTS WITH BOTH THE STATUTE AND THE COMMISSION'S OWN REGULATION.

The Commission fails to show that it is reasonable or consistent with Section 6409(a) and its regulations to impose a per-modification, rather than cumulative, limit on the number of new equipment cabinets that "do[] not substantially change the physical dimensions" of an existing facility. 47 U.S.C. § 1455(a)(1).

1. On brief, the Commission attempts to defend the *Declaratory Ruling* based on the term "existing" in the statute and regulations by claiming that Localities' position would mean that a modification "transform[s] an 'existing' structure into one that is not 'existing,'" and therefore "only the first collocation on any structure would be covered by Section 6409(a)." FCC Br. 50; *see also* Industry

Intervenors Br. 30-31. Not so. The word existing clarifies what the modification is to be measured against: the existing structure that, according to the Commission's own definition, was reviewed and approved under the relevant State or local process.[12]

Take, for example, an existing eligible support structure that has two equipment cabinets added to it. That first addition of two equipment cabinets would be covered by Section 6409(a). Subsequent additions of more equipment cabinets would also still be subject to Section 6409(a)'s substantial change standard. But to evaluate whether a subsequent addition of equipment cabinets is a modification that substantially changes the physical dimensions of the "existing" "eligible support structure," as the Commission has defined those terms,[13] one must consider the total number of new equipment cabinets added since the facility was subject to local review and approval. This reading is consistent with both the Commission's own regulations and with the text and purpose of Section 6409(a).

---

[12] 47 C.F.R. § 1.6100(b)(5) (defining "existing" as: "A constructed tower or base station is existing for purposes of this section *if it has been reviewed and approved under the applicable zoning or siting process, or under another State or local regulatory review process*, provided that a tower that has not been reviewed and approved because it was not in a zoned area when it was built, but was lawfully constructed, is existing for purposes of this definition") (emphasis added).

[13] 47 C.F.R. § 1.6100(b)(4), (5) (defining eligible support structure and existing, respectively).

2.     The Commission also argues that the "structure of the rules," specifically the relationship between the height provision of 47 C.F.R. § 1.6100(b)(7)(i) and the equipment cabinet provision of 47 C.F.R. § 1.6100(b)(7)(iii), precludes a cumulative limit on equipment cabinets. FCC Br. 48-49. This argument falls short. That a cumulative limit on new equipment cabinets is *consistent* with the cumulative limit on height increases undermines, rather than supports, the Commission's position.

The Commission acknowledges that its height-related regulations refer to cumulative height increases. FCC Br. 48. Measuring substantial changes to eligible support structures based on cumulative changes—rather than allowing unlimited changes so long as done in a piecemeal fashion—is consistent with the statute. The Commission fails to provide any rational explanation for how the statute allows some physical changes to be evaluated on a cumulative basis but not others.

The Commission and Industry Intervenors wrongly suggest that the baseline provision for height increases, 47 C.F.R. § 1.6100(b)(7)(i)(A), indicates that the height provision is the only provision in the regulations that imposes a cumulative limit. FCC Br. 48-49; Industry Intervenors Br. 30 n.8. Section 1.6100(b)(7)(i)(A), however, does not merely establish that the height provision imposes a cumulative limit. Rather, it establishes how changes in height should be measured (1) "in cases where deployments are or will be separated horizontally, such as on buildings'

rooftops," compared to (2) "other circumstances" involving "tower[s] or base station[s]." 47 C.F.R. § 1.6100(b)(7)(i)(A). The absence of this language in the equipment cabinet provision therefore does not support the Commission's construction of the equipment cabinet limit as non-cumulative; rather, the absence of this language indicates that the equipment cabinet provision does not distinguish between (1) circumstances where deployments are separated horizontally, and (2) other circumstances.

Indeed, the Commission's and Industry Intervenors' position would perversely read Sections 1.6100(b)(7)(i) and 1.6100(b)(7)(i)(A) to conflict with each other. Section 1.6100(b)(7)(i) has the same structure as the equipment cabinet provision, as both describe the changes caused by "it"—i.e., a modification. Under the Commission's reading, Section 1.6100(b)(7)(i) would therefore only address the incremental (not cumulative) height increase of each modification. Localities' reading, however, would read Sections 1.6100(b)(7)(i) and 1.6100(b)(7)(i)(A) in harmony, with both referring to cumulative limits and Section 1.6100(b)(7)(i)(A) further describing where to start measuring the cumulative increase in different circumstances.

Because the *Declaratory Ruling*'s interpretation of the equipment cabinet provision of Section 1.6100(b)(7)(v) is unsupported by the regulatory text and contrary to the statute, it cannot stand.

**IV.     THE STATUTE DOES NOT ALLOW THE HEIGHT OF A NEW ANTENNA TO BE IGNORED WHEN DETERMINING WHETHER A MODIFICATION SUBSTANTIALLY CHANGES THE PHYSICAL DIMENSIONS OF AN EXISTING FACILITY.**

Section 6409(a)'s "shall approve" and "may not deny" mandate applies only to those "modification[s] of . . . existing wireless tower[s] or base station[s] that do[] not substantially change the physical dimensions of such tower[s] or base station[s]." 47 U.S.C. § 1455(a)(1). The Commission fails to explain how ignoring the height of a new antenna can be squared with the statute.

1.     On brief, the Commission attempts to justify the *Declaratory Ruling*'s new interpretation of 47 C.F.R. § 1.6100(b)(7)(i) by relying on the height of a typical antenna, claiming that its interpretation will "typically" limit substantial changes to those "less than 30 feet." FCC Br. 42. In doing so, the Commission essentially concedes the core issue: that the height of the new antenna—not merely the distance between the top of the existing antenna and the bottom of the new one—is indispensable in determining whether there has been a substantial change in physical dimensions of the existing facility. The Commission's argument also admits that the *Declaratory Ruling* would allow for height increases that *exceed* thirty feet, an increase that even the Commission cannot plausibly argue is insubstantial.

17

The Commission's reliance on the typical size of antennas is flawed for two additional reasons. First, it is inconsistent with the text of the regulation. Other aspects of the regulations implementing Section 6409(a) impose limits based on "standard" deployments. *See, e.g.*, 47 C.F.R. § 1.6100(b)(7)(iii) (referring to "the standard number of new equipment cabinets for the technology involved"). The height provision of 47 C.F.R. § 1.6100(b)(7)(i) does not. This provision applies to *any* "additional antenna array with separation from the nearest existing antenna not to exceed twenty feet," not the addition of one *typical* antenna array.

Second, the Commission's reliance on the typical size of antennas on brief is not supported by the *Declaratory Ruling*. The *Declaratory Ruling* does not contain any factual findings as to typical antenna sizes or the range of antenna sizes—let alone rely on such findings to support its interpretation. The Commission claims that it "was under no obligation to address far-fetched hypotheticals." FCC Br. 43-44. But it is obligated to provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). Given the lack of any factual finding on typical antenna heights, the Commission has fallen short of this standard.[14]

---

[14] The Commission's cursory assertion on brief about the height of typical antennas cannot cure the *Declaratory Ruling*'s shortcoming. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

2.  Both the Commission and Industry Intervenors also emphasize the Commission's interpretation of a height-related provision in the 2001 *Collocation Agreement* (SER-187). FCC Br. 41; Industry Intervenors Br. 27, 44. That discussion is irrelevant. The critical issue here is whether the *Declaratory Ruling* is compatible with Section 6409(a) of the Spectrum Act. The Commission's discussion of a separate provision implementing different statutory obligations cannot overcome the *Ruling*'s inconsistency with Section 6409(a).

Industry Intervenors claim that the Commission can rely on the 2001 *Collocation Agreement* to construe the regulations implementing Section 6409(a) because the Commission "address[ed] this exact question in the 2001 Collocation Agreement." Industry Intervenors Br. 44. But the 2001 *Collocation Agreement* did *not* address the exact question of what constitutes a substantial change under Section 6409(a). Nor could it, given that Section 6409(a) did not exist at that time. Rather, the 2001 *Collocation Agreement* addressed separate and distinct obligations under the National Historic Preservation Act and National Environmental Policy Act. Intervenor Br. 37-38; *see also* FCC Br. 6 (referring to "federal environmental and historic preservation laws").

For the same reason, the Commission's and Industry Intervenors' emphasis on the text of 47 C.F.R. § 1.6100(b)(7)(i) is unavailing. Even assuming that the regulation could, on its own, be reasonably read in the manner they advocate, that

does not support the conclusion that antenna height is irrelevant to the *statutory* standard of whether a modification "substantially change[s] the physical dimensions" of an existing facility. 47 U.S.C. § 1455(a)(1). Just as the Commission cannot enact a regulation that exceeds its statutory authority,[15] it also cannot interpret an existing regulation in a manner that exceeds the source of its statutory authority.

3.     Finally, the Commission cannot avoid conflict with the statute by replying on "Congress's 'objective to facilitate streamlined review.'" FCC Br. 44 (quoting *Declaratory Ruling* ¶ 25 (1-ER-17)). The statute makes clear that Congress intended to facilitate streamlined review only for those modifications that did not result in substantial changes to existing structures. It is circular to argue that this purpose can be used to inform what is "substantial," particularly given Congress's expressed intent to preserve local review of modifications that would result in substantial changes. Because ignoring the height of a new antenna is incompatible with the statute's "substantially change the physical dimensions" standard, the *Declaratory Ruling*'s interpretation of Section 1.6100(b)(7)(i) should be vacated.

---

[15] "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

## CONCLUSION

The Court should grant the petitions and vacate the *Declaratory Ruling*.

Respectfully submitted,

*s/ Jeffrey M. Bayne*

Jeffrey M. Bayne
Lauren L. Springett
Spiegel & McDiarmid LLP
1875 Eye Street, NW
Suite 700
Washington, DC 20006
(202) 879-4000

*Attorneys for Intervenor City and County of San Francisco, California*

April 7, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  20-71795 (consolidated cases 20-72734 and 20-72749)

I am the attorney or self-represented party.

**This brief contains** 4,463 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ Jeffrey M. Bayne   **Date** 4/7/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                                           *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

I hereby certify that I have on this 7th day of April, 2023, caused the foregoing document to be served electronically through the Court's CM/ECF system.

*s/ Jeffrey M. Bayne*

Jeffrey M. Bayne
Spiegel & McDiarmid LLP
1875 Eye Street, NW
Suite 700
Washington, DC 20006
(202) 879-4000